**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 24-cr-297 (RC)** |
| | **:** | |
| **TROY TERINO,** | **:** | |
| | **:** | |
| **Defendant** | **:** | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Troy Terino has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence Terino to 14 days' incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

## I.    Introduction

Defendant Troy Terino, a 36-year-old President of a construction business, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful

1

transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Terino pleaded guilty to disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol and parading, demonstrating, or picketing in any Capitol building. The government's recommendation is supported by Terino's (1) entering the Capitol at the Senate Wing Door, the initial breach point on January 6, notwithstanding the signs of the violent breach, including broken windows and a blaring, audible alarm; (2) minimizing his conduct in an interview with the FBI; and (3) extensive criminal history.

The Court must also consider that Terino's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Terino's crime support a sentence of 14 days of incarceration, 36 months of probation, 60 hours of community service, and $500 restitution.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.    Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 26 (Statement of Offense).

*Defendant Terino's Role in the January 6, 2021 Attack on the Capitol*

On January 5, 2021, Troy Terino traveled to Washington, D.C. from Florida to attend the former President's "Stop the Steal" rally by the Ellipse. After the speeches, Terino traveled to the Capitol. Terino wore a red "Make America Great Again" cap, a tan hooded jacket, and blue disposable face mask.  *See* Image 1.



***Image 1***

According to his phone records, Terino was inside Capitol Grounds and the interior of the United States Capitol building on January 6, 2021 between approximately 1:15 p.m. and 3:21 p.m.[2]

---

[2] While on the Capitol Grounds, Terino appears to have attempted to pull a piece of fencing to assist a USCP officer and other rioters evacuate an injured rioter. *See* https://www.youtube.com/watch?v=X-mBZbdu79k.

Terino made his way to the Upper Terrace of the Capitol and joined a large, loud crowd in the Northwest Courtyard. *See* Image 2 and Exhibit A.



***Image 2: Screenshot of Exhibit A at 00:22 with Terino identified in red rectangle in upper right corner of image.***

At approximately 2:58 p.m., Terino entered the Capitol through the Senate Wing Door, as shown in Exhibit B and below in Image 3.



***Image 3: Screenshot of Exhibit B at 1:57 showing Terino (circled in red) walking through the Senate Wing Door***

The Senate Wing Door had been broken open by other rioters approximately 45 minutes earlier. When Terino entered, he had to maneuver into the building amidst a flow of rioters leaving the Capitol. The alarm was blaring, and the windows and door were broken. *See, e.g.* Exhibit C (selfie video of rioter entering before Terino with audio of piercing alarm); Exhibit D at 5:00-7:25 (showing rioters leaving through Senate Wing Door and adjacent broken windows).



*Image 4: Screenshot of Exhibit D at 7:20 as Terino walks away from Senate Wing Door*

Terino then walked to and through the Crypt.  He walked down a hallway by the House

Wing Door and through the Hall of Columns, as shown below in Images 5 and 6.



*Image 5: Terino walking down hallway by House Wing Door*

6



*Image 6: Terino walking through Hall of Columns*

Finally, Terino proceeded out of the Capitol through the South Door at approximately 3:02 p.m., as shown in Image 7. He was inside the Capitol for approximately five minutes.



*Image 7: Terino exiting the Capitol through South Door*

*Terino's Interview with the FBI*

On September 20, 2021, FBI agents interviewed Terino. He identified himself as the individual depicted in Image 1 and other photographs from January 6, 2021.  Terino stated that he traveled from Florida to Washington, D.C. on January 5, 2021, stayed at a hotel in Washington, D.C., and returned on January 7, 2021. Terino said that he went to the rally because of the way things were going in the country.

During the interview, Terino claimed he did not enter the Capitol intentionally but was pushed by the crowd into the building. He alleged U.S. Capitol Police were "herding people" through the Capitol, akin to "a guided tour."  Terino stated that his path was through the door, down a straight path, as directed by officers, and out a different door.

Terino acknowledged that he saw people breaking windows and that tear gas was deployed. Terino alleged in the interview that before anyone breached the barricades the officers started shooting tear gas into the crowd, including those in the back of the crowd.

Terino stated that he did not have guilt about going to Washington, D.C. until he started to watch the events on television. He acknowledged that after the fact, he wished he had not gone.

*The Charges and Plea Agreement*

On June 21, 2024, the United States charged Terino by a two-count Information with violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). On July 19, 2024, pursuant to a plea agreement, Terino pleaded guilty to both counts of the Information. By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Terino now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, Terino faces up to six months of

imprisonment and a fine of up to $5,000 per count.  He must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days of incarceration, 36 months of probation, 60 hours of community service, and $500 restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Terino's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Terino, the absence of violent or destructive acts is not a mitigating factor. Had Terino engaged in such conduct, he would have faced additional criminal charges.

Despite observing tear gas, Terino advanced toward the Capitol. There, he saw broken windows and rioters entering the building through the broken windows. Nevertheless, he made entry to a non-public, alarmed entrance. Thus, he took advantage of the opportunity presented by

the mob, ignored the obvious signs of violence and property destruction taking place, and unlawfully entered the building.

Accordingly, the nature and the circumstances of this offense support the recommended sentence of 14 days incarceration.

### B. Terino's History and Characteristics

As set forth in the PSR, Terino is the President of a construction business. He has an extensive history of criminal arrests and convictions.

In 2016, when the defendant was 27 years old, he was charged with felony fleeing to elude and misdemeanor criminal mischief. PSR § 30. Less than a month later, he was charged with felony aggravated battery on a pregnant female, battery, and a violation of pretrial release condition. PSR § 31. For both offenses, he was sentenced to one year in jail followed by three years' probation, and his probation was terminated in 2018. PSR §§ 30-31.

In addition to the felony offenses above, Terino's history of criminal arrests and convictions, includes:

- In 2008, he was charged with possession of cannabis with intent to sell or distribute; possession of cannabis; possession of controlled substance with intent to deliver; possession of controlled substance; and possession of drug paraphernalia. PSR § 26. He was sentenced in 2011 to 36 months' probation and (presumably after he violated the conditions of his probation) sentenced in 2012 to 364 days in jail. *Id.*

- In 2010, he was charged with criminal mischief of $1,000 or more. PSR § 27. His adjudication was withheld. *Id.*

- In 2013, he was charged with possession of controlled substance and possession of less than 20 grams of cannabis. PSR § 28. The Probation Office was unable to determine the resolution of that charge. *Id.*

- In 2014, he was charged with possession of drug paraphernalia. PSR § 29. He was sentenced to 45 days in jail. *Id.*

10

- In 2017, he was convicted of reckless driving (reduced from DUI). PSR §§ 32-33. For both offenses, he was sentenced to one year of probation.

- In 2018, he was found in violation of his probation and/or his probation was revoked as to several of the above offenses. *See* PSR §§ 30-33.

He was also arrested for obstructing or opposing an officer in 2006 and battery in 2012; those cases were dismissed. PSR §§ 35-35. In 2013, he was arrested for obstructing or opposing an officer; the case was nolle prossed. PSR § 37.

The government recognizes that Terino's most recent conviction was for an offense in 2017 when he was 28 years old. However, this history shows that Terino's actions on January 6 were not an isolated event in an otherwise law-abiding life. They came, instead, after a series of previous charges, including two felony convictions and multiple terms of incarceration.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence in this case to provide specific deterrence to Terino also weighs in favor of a term of incarceration. In particular, Terino minimized his conduct when he was interviewed by FBI agents and has an extensive criminal history.

Although Terino swiftly accepted responsibility in this case and expressed to officers that he had guilt when he viewed events on television and "wished he hadn't gone," he also falsely claimed that he was pushed by the crowd into the building and "the police were herding people" akin to "a guided tour." As shown in Exhibits A-D, Terino and others walked in voluntarily. At the time he entered, police were overwhelmed and overrun by rioters entering the building.

Moreover, as discussed above, his history of prior arrests and convictions reveals a clear pattern of disrespect for the law. *See* Section IX(B) *supra.* In 2018, approximately two and a half years before the conduct in the instant case, he was found in violation of his probation in multiple serious cases, including felony fleeing to elude and criminal mischief, aggravated battery on a

12

pregnant female and battery, and two separate charges for reckless driving (reduced from DUI) occurring within two months of each other. Nevertheless, Terino's prior experiences with the criminal justice system did not deter him from committing crimes on January 6. Therefore, his sentence in this case must be sufficient to provide specific deterrence from committing future crimes.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[3] This Court must sentence Terino based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Terino has pleaded guilty to the Information in this case, charging him with disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count One) and parading, demonstrating, or picketing in any Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Two). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

Other defendants with a significant criminal history who have pled guilty to misdemeanor offenses have been sentenced to incarceration. For example, in *United States v. Edward Hemenway*, 21-cr-00049 (TSC), the defendant had a serious criminal history and was sentenced to 45 days' incarceration. Hemenway's criminal history was more significant than Terino's and included a conviction for Sexual Battery and Criminal Confinement.

In *United States v. Mark Simon,* 21-cr-00067 (ABJ), Simon had 10 prior criminal convictions, including one drug-trafficking felony, a firearms-related misdemeanor, a vehicular assault, and at least five revocations of probation. Judge Berman Jackson sentenced him to 35 days' incarceration. Although Simon's criminal history is comparable to Terino's, Terino warrants a lower sentence than Simon because Simon enthusiastically entered the Capitol, recorded boastful statements on his cellphone about his breach, and one of his videos was posted on social media.

The instant case is most comparable to *United States v. Joshua Colgan*, 22-cr-00224 (DLF). In that case, the defendant similarly entered the Capitol through the Senate Wing Door and remained inside for a relatively brief period. Like Terino, a distinguishing factor in Colgan's case was his criminal history. Colgan had a history of several misdemeanor convictions and one felony conviction, whereas Terino has more significant criminal history with multiple felony convictions. Judge Friedrich sentenced Colgan to 28 days of intermittent confinement. Because Colgan failed

to fully comply with his conditions of release and posted inflammatory social media messages, a lesser 14-day sentence for Terino would not create an unwarranted disparity.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Terino must pay $500 in restitution, which reflects in part the role Terino played in the riot on January 6.[5] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Terino's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 94.

## VI.    Fine

Terino's convictions for violations of 40 U.S.S.G. §§ 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000 for both counts. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G.   § 5E1.2(d). The

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on Terino to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, Terino has not shown an inability to pay, thus pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e).

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 days incarceration on Count One, 36 months' probation on Count Two, 60 hours of community service, $500 in restitution, and an appropriate fine. Such a sentence promotes respect for the law and deters future crime by imposing restrictions on Terino's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      s/ *Sarah W. Rocha*
SARAH W. ROCHA
Trial Attorney
D.C. Bar No. 977497
601 D Street, NW
Washington, DC 20530
sarah.wilsonrocha@usdoj.gov